IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 7:10CR00005 |
| v. | : | |
| | : | |
| WARREN AUBRA TAYLOR | : | |

**SENTENCING MEMORANDUM OF THE UNITED STATES**

The defendant, Warren Aubra Taylor, has pled guilty pursuant to a written plea agreement to five counts of a Superseding Indictment returned by a federal grand jury on March18, 2010. The charges to which he has pled guilty are:

      Count 2: possess and discharge a firearm in furtherance of crime of violence, in violation of 18 U.S.C. § 924(c). The maximum statutory penalty is a fine of $250,000 and/or imprisonment for a term of life, plus a term of supervised release. There is a mandatory minimum sentence of imprisonment for a term of ten years. The sentence imposed for this count must be served consecutively to every other sentence imposed.

      Count 3: possess a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1). According to the presentence report, Taylor has at least three prior convictions for violent felonies[1] and faces a mandatory minimum sentence of

---

[1] The felonies include Assault With a Dangerous Weapon, Yuma County, Arizona (conviction date on or about September 19, 1975); First Degree Burglary, Sullivan County, Tennessee (conviction date on or about May 18, 1981); Attempted Murder Second Degree, Manatee County, Florida (conviction date on or about August 15, 1994); Lewd and Lascivious Act, Manatee County , Florida (conviction date on or about 8/11/86);Lewd and Lascivious Act (2 counts), Manatee County , Florida (conviction date on or about August 15, 1994). PSR paragraphs 52-56.

imprisonment for a term of fifteen years and a maximum sentence of imprisonment for life, pursuant to 18 U.S.C. § 924(e).

Counts 4, 5 and 6: kidnaping, in violation of 18 U.S.C. § 1201. The maximum statutory penalty for each count of conviction is a fine of $250,000 and/or imprisonment for a term of life.

As a part of Taylor's plea agreement, the United States agreed to withdraw the Information it had filed pursuant to Title 18, United States Code, Section 3559(c)(1) and Title 21, United States Code, Section 851(a). However, paragraph B.2 (f) of the plea agreement further provides

> I HAVE BEEN ADVISED BY THE UNITED STATES THAT, NOTWITHSTANDING THE WITHDRAWAL OF THE INFORMATION, THE UNITED STATES BELIEVES THAT UNDER THE PROVISIONS OF 18 U.S.C. 3553(a) A SENTENCE OF LIFE IMPRISONMENT IS APPROPRIATE AND REASONABLE AND WILL REQUEST THE DISTRICT COURT TO IMPOSE A TERM OF LIFE IMPRISONMENT WHEN I AM SENTENCED.

(Capitalization in original).

Title 18, United States Code, Section 3553(a) requires the court consider certain factors and then to impose a sentence that is sufficient, but not greater than necessary to comply with the purposes of the statute. The United States submits that, for the reasons which follow, the only appropriate and reasonable sentence for Taylor is life imprisonment.

The statute sets forth seven factors which are determinative of the sentence to be imposed. Factors most pertinent to this case will be addressed seriatim.

1. <u>The nature and circumstances of the offense and the history and characteristics of the defendant</u>. The presentence report cannot capture, indeed no written document can capture the terror engendered by the offense conduct carried out by Taylor. At approximately 10:30 a..m. on December 23, 2009, Taylor left his home in Bristol, Tennessee with the premeditated intention of using firearms and dummy explosive devices to take over a federal facility. His sole motive for

doing so was to vent his displeasure with the government and policies of the United States. He drove his vehicle toward Roanoke, Virginia but elected to stop in Wytheville for food. By happenstance, he decided to carry out his plan in that town rather than travel to Roanoke. At approximately 2:30 p.m., he entered a public post office during regular business hours and while customers were present. He discharged his pistol in the lobby of the building. The bullet barely missed the postmaster, Terry Clark who, along with other employees, were able to escape the building. Others were not so fortunate. Taylor took two male customers, Douglas Robinson and James Oliver, and a female postal employee, Marjorie Austin, as hostages. At the time of the incident, Ms. Austin was engaged in the performance of her official duties.

Taylor ordered the hostages to lay the floor of the post office and thereafter forced them to move to the post office store on the Main Street side of the building. He told the hostages and responding law enforcement officers that he had an number of explosive devices (5 pounds of C4 plastic) that would detonate if he (Taylor) fell over for any reason. He also said that he had explosive material in his truck and, indeed, what appeared to be grenades were visible in his vehicle parked next to the post office. Taylor pointed a firearm at the head of Ms. Austin and directed her to call 911 so he could speak with the police dispatcher. Taylor fired 3 rounds through a window in the front of the post office in the direction of law enforcement officers who had surrounded the premises. He told the hostages that the "Barnies" (local law officers) were outside and demanded to speak with agents of the FBI. Those agents arrived on the scene later that evening and engaged in extended negotiations with Taylor. He also demanded to speak with a "bomb expert" who could examine the devices he had brought into the facility to confirm that they were, in fact, explosive devices.

Taylor forced Ms. Austin to sit on his knee for an extended period of time while he held and pointed a firearm at the male hostages.  During the course of the evening, Taylor told the hostages that he was a former member of the U.S. military; that he had lost his leg in combat operations overseas; that his son had been killed in Afghanistan; that he was angry and upset with the federal government; how the country was going to "pot," paying people too much for jobs that didn't need to be done; that Obama had won the Nobel Peace Prize while sending an additional 30,000 troops to Afghanistan.  He also complained about illegal "Mexicans" taking jobs and benefits that should, in his opinion, go to Americans.

Taylor gave a verbal statement after his arrest. He said he got the idea to take over a post office "years ago" because it was, in his words a "symbol of federal inefficiency" and he "wanted to show he was tired of the government doing what they were doing."

Further investigation revealed that Taylor never served in the military and that the loss of his leg had no connection to any military activity on his part.  Nor has there been any confirmation that he lost a son in combat operations in Afghanistan.

As documented in the PSR, Taylor has a significant and violent prior criminal history involving the use of firearms.  He was forced to quit school because of what he characterizes as an "inappropriate relationship with a female student." PSR para. 67 and has been married three times. PSR para. 63.  He has not worked since 2002.  PSR at para. 68.

    2.    <u>The Need For the Sentence imposed -</u>

    (A)    <u>to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense</u>;

>    (B)    to afford adequate deterrence to criminal conduct;
>
>    (C)    to protect the public from further crimes of the defendant.

It is difficult to imagine a more serious course of criminal conduct than that perpetrated by Taylor. Only the professionalism of law enforcement officers, the resolve of the hostages and a generous dose of good fortune prevented the loss of human life.

Taylor's prior record likewise supports the appropriateness of a life sentence. In 1975, he embarked on a crime spree that included stealing a car and gasoline and discharging a firearm at employees attempting to apprehend him. PSR para. 50-52. He was released from court supervision in January, 1979. Less than a year later, on December 1, 1980, he broke into a residence in Sullivan County, Tennessee and stole firearms, jewelry and other items. PSR 53. He served five years and was released on parole in October, 1983. Taylor later relocated to Florida where, in 1986, he was convicted of sexual misconduct involving his then eight year old daughter. He showed her pornographic magazines, fondled her vagina and used a vibrator on his penis in her presence. He was released from probation n 1988. PSR para. 54. In 1994, he was again convicted of sexual misconduct involving his then 13 year old daughter. His actions included removing her clothing, attempting sexual intercourse and fondling of her breasts and vagina. PSR para. 55. During that same time, Taylor drove to his wife's place of employment and shot her three times. He was sentenced to concurrent terms of twelve years imprisonment for the attempted murder and sexual misconduct offenses. PSR para. 56.

Taylor was released from prison in 1998.

(D)     to provide the defendant with needed . . . medical care or other correctional treatment in the most effective manner. The United States has agreed that Taylor is in need of care to address extant medical conditions which will exist for the rest of his life.

3. The kinds of sentences available. Each of the counts of conviction carries a maximum of life imprisonment. Mandatory minimums attaching to Counts 2 and 3 total 25 years.

4. The kinds of sentence and sentencing range established in the United States Sentencing Guidelines. The advisory guidelines calculated by the probation officer provide for a sentence of life imprisonment. PSR para. 71. It is the position of the United States that the guideline calculation by the probation officer is accurate and legally correct and will be defended if challenged by Taylor. If, however, the court finds that the guidelines were erroneously calculated such that the advisory guideline sentence is less than life, the United States submits that consideration of the remaining statutory factors supports the imposition of a sentence of life imprisonment for Taylor notwithstanding the advisory guideline range.

The court must also consider the statutory directive to provide for restitution to any victims of the offense. 18 U.S.C. §3553(a)(7). These include the individual victims who have been traumatized and, as a result, forced to incur professional fees and loss of income. PSR para. 12. The institutional victim, the United States Post Office, has incurred costs in the amount of $898.78 to clean and repair damages to the building. PSR para. 13.

For each of the foregoing reasons, the United States requests the court to sentence Taylor to life imprisonment. The United States further requests that the court order forfeiture of the firearms and ammunition and restitution to the victims of the offense.

    Respectfully submitted,

    TIMOTHY J. HEAPHY
    UNITED STATES ATTORNEY

Dated: July 23, 2010    s/ Anthony P. Giorno
    First Assistant United States Attorney
    VSB #15830
    United States Attorney's Office
    P.O. Box 1709
    Roanoke, VA 24008
    Telephone (540) 857-2878
    Facsimile (540) 857-2614

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing <u>SENTENCING MEMORANDUM OF THE UNITED STATES</u> has been electronically filed by CM/ECF system which will send notification of such filing to Fay Spence, Esq. on this 23rd day of July, 2010.

    s/ Anthony P. Giorno
    Assistant United States Attorney