IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 7:10CR00005 |
| ) | |
| WARREN AUBRA TAYLOR, ) | |
| ) | |
| Defendant. ) | |

## SENTENCING MEMORANDUM

COMES NOW the defendant, Warren Aubra Taylor, by counsel, and moves this Honorable Court to impose a sentence of 25 years (300 months) in this matter. As grounds for this motion, defendant respectfully states as follows:

### FACTUAL BACKGROUND

On December 23, 2009, Taylor held three people hostage at the Post Office in Wytheville, Virginia. He started by pulling a firearm and telling people not to move. The postmaster and another employee started to run, and Taylor filed a single shot in the direction of the Postmaster, who continued running and made it safely out of the building. Taylor directed the three people who remained to lie down on the floor. In addition to firearms, Taylor claimed to have bombs/explosives. He fired out the window in the direction of the police who responded, and he demanded to speak with federal authorities, rather than local law enforcement, but he made no demands for money or benefits from the government. He complained to his hostages about his displeasure with the federal government, particularly the war in Afghanistan and illegal immigrants taking jobs away from Americans. Once he had control of the post office, he allowed the hostages to sit up and to phone their families, and he did not physically harm any of them. After approximately 9 hours, he surrendered to law enforcement.

SENTENCING FACTORS

The primary mandate of 18 U.S.C. § 3553(a) is that the District Court shall impose a sentence "sufficient, *but not greater than necessary*, to comply with the purposes" of punishment as set forth in subdivision (a)(2) of the statute. Id. (emphasis added). The four purposes identified are: retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"), deterrence, incapacitation ("to protect the public from further crimes of the defendant"), and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). In determining a sentence that is sufficient, but not greater than necessary, the Court is directed to consider the following factors in addition to the advisory guidelines: the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Thus, the guidelines are only one of the factors to consider, not the controlling factor, and the guidelines do NOT adequately consider the range of other factors required by the statute. When these factors are considered, the requested sentence of 300 months is sufficient to accomplish the purposes of punishment.

Nature and Circumstances of the Offense

Undoubtedly, the offenses were frightening and created a fear of imminent harm or death in the minds of the victims. However, Taylor did not cause physical injury to any of the hostages, and the stand-off with police ended in a matter of hours. Taylor was not motivated by pecuniary gain, lacivious intentions, or revenge; rather, he was an angry man who chose a horrible way to express his concerns about what he viewed as a failing government.

History and Characteristics of the Defendant

Taylor is a 54-year-old man in very poor health.  He is obese, and he has high blood pressure, high cholesterol, and congestive heart failure.  He injured his left leg in a diving accident, and it would not heal properly, finally being amputated in 2007; during this time, he learned that he had diabetes. He now suffers from poorly controlled insulin-dependent diabetes, with diabetic neuropathy.  His medications before incarceration included two types of insulin, lisinopril (blood pressure), carvedilol (heart failure), gabapentin (off-label for neuropathy), and Lortab (nerve pain).  According to the National Vital Statistics Reports, a white man Taylor's age normally has an average remaining life expectancy of 25.7 years. National Vital Statistics Reports, Life Table for White Males:  United States, 2006, Vol. 58, No. 21, p. 15 (June 28, 2010).  However, diabetes is the 6th leading cause of death in the United States and definitely reduces one's life expectancy.  One Study concluded that diabetic men over age 50 die, on average, 7.5 years earlier than similarly situated men without diabetes.  Crystal Phend, Diabetes Knocks Down Life Expectancy, MedPage Today (June 12, 2007), http://www.medpagetoday.com/tbprint.cfm?tbid=5911.

Beyond the obvious physical health concerns, Taylor harbors deep emotional scars and mental health issues.  His parents separated when he was very young, and he was left with his father.  Unfortunately, on September 24, 1967, when Taylor was only 11 years old, he discovered his father's body in the car of their closed garage, with the auto exhaust pipe connected to the car. He went to live with his mother and her new boyfriend, but that relationship was extremely abusive, leading to conflict whenever Taylor tried to defend his mother.  He was sent to live with his Grandmother by his teen years, and although his material needs were met, his Grandmother already had several of her own children to tend to, and Taylor never felt like part of the family.



As a young man in his late teens and early 20s, Taylor frequently got in trouble with the law for impulsive and aggressive behavior, including assault with a deadly weapon for shooting at a flying airplane, burglary, and car theft. The assault and burglary convictions, although 30 years or more ago, are two of the predicate offenses on which his current "armed career criminal" status is based.

Taylor married more than once, but his longest marriage was to Karen Taylor, with whom he had a daughter, Kerri. As often happens, when that marriage failed, his estranged wife did everything she could to alienate Taylor from his daughter. This led to allegations of sexual abuse. In 1986, he pled "no contest" to "lewd and lacivious assault or act" upon or in the presence of a child under age 16. Significantly, under Florida law, the statute under which he was convicted, FL. Stat. § 800.04, has, as an essential element, that sexual battery is NOT intended. Harrielson v. State, 441 So. 2d 691, 693 (1983). Similar charges were alleged against him in 1991, but he did not learn of those allegations until 1993, when his picture appeared on the television news as a "wanted sex offender." In his rage, he went to his ex-wife's workplace to confront her in the parking lot. He shot her three times, once in each ankle and once in the right thigh. See article from The Tampa Tribune, attached as Exhibit 1. He pled no contest to attempted murder and two counts of "lewd and lacivious act" (the same "no intent" crime as his 1986 conviction), for all three of which he received a total sentence of 12 years.

While serving time for shooting his ex-wife, Taylor maintained an excellent record in the Florida Department of Corrections. He did not have a single disciplinary action against him during his entire incarceration. He maintained work assignments in air conditioning and later as a gasoline engine mechanic. He also attended educational classes. He received significant incentive good time credit, as well as some educational good time credit, and was released in

December 1998.  See Inmate Record, attached as Exhibit 2.  Thereafter, he successfully completed his three years of probation.  He had no further entanglements with the law until 11 years later, when the current incident occurred.

After his release from incarceration in 1998, Taylor became employed as a truck driver for PODS, earning $13 per hour.  He maintained this employment until he became disabled as a result of his leg injury and diabetes, and then went on Social Security disability.

The mid to late 2000s confronted Taylor with several significan losses.  Having already suffered an acrimonious divorce and estrangement from his ex-wife and daughter, his daughter succumbed to cancer in December 2004, at the age of 26.  He was not allowed to attend the visitation or funeral.



In Memory of Kerri Lee Taylor

Peace to your loved ones and friends.  God knows how much I love you.  No one can wish, say, or hope my love for you away.  You will be with me forever.  I will always love you and miss you.  Infinity times 2.
Your Father

**Kerri Lee Taylor**

Kerri Lee Taylor, 26, of Bradenton, died Dec. 27, 2004. She was a lifelong resident of Bradenton. Kerri was a 2004 graduate of USF and taught at Rainbow Station Too in Bradenton. She attended Sacred Heart Catholic Church. Survivors include her mother and stepfather, Karen and Matt Root of Bradenton; grandfather, Bill Weyer of Bradenton; aunt, Marilyn Collins of Marion, N.C.; uncle, Ron Weyer of Bradenton; and numerous cousins. Visitation will be held Sunday, Jan. 2, 2-4 p.m. at Griffith-Cline Funeral Home, Manatee Avenue Chapel. Funeral mass will be Monday, Jan. 3, 10 a.m. at Sacred Heart Catholic Church with Fr. M. Gerald Gordon officiating. Burial will be at Mansion Memorial Park in Ellenton. Memorial contributions may go to H. Lee Moffitt Cancer Center, c/o Foundation, 12902 Magnolia Dr., Tampa, FL 33612.

Published in The Herald on 12/30/2004

With his injury and illness in 2007, he lost his leg, his job, and his home, and was forced to move in with family in Indiana. Over the years, he had not maintained a close relationship with his siblings, as he was not raised with them, so they did not know very much about him. He did, however, establish a much closer relationship with his mother, that he had not been able to have during his childhood. Then, in 2008, his mother died, and then his illegitimate son Bobby was killed in Afghanistan. Because of respect for Bobby's mother, who had already been through enough and ended her relationship with Taylor on bad terms decades before, Taylor did not attend the memorial service for his son. These deaths plunged him into a depression, but he lacked the self-awareness, resources, and support network to recognize and deal appropriately

with his depression and the feelings of anger and abandonment of his earlier childhood losses that were re-triggered as well.

### Kinds of Sentences Available

By statute, Taylor faces a mandatory 10-year sentence for Count Two, discharging a firearm during a crime of violence, which must run consecutively to any other sentence imposed. Likewise, the Court must impose 15 years for Count Three, possession of a firearm by a convicted felon, because he has three prior violent felonies, even though two of those were 30+ years ago. That 15-year sentence can run concurrently with any sentence imposed for Counts Four, Five, and Six, for which the Court may impose anything from one day to life in prison. Any imprisonment must be followed by 3 - 5 years of supervised release.

Fines are available, too, in addition to imprisonment, but Taylor lacks resources to pay a fine. Any money paid should go towards the restitution confirmed in the pre-sentence report.

### Avoiding Unwarranted Sentencing Disparity

This case has extremely unique facts. Although kidnapping cases occur with some regularity, they usually involve robberies, pecuniary motives, sexual deviance, or domestic violence. Taylor, however, was motivated by anger and frustration over governmental policies that allowed his son to get killed in Afghanistan. Taylor's background and characteristics are is individual as his crime. It would be very difficult to find another defendant and another crime with which to compare his sentence.

Between October 1, 2009, and June 30, 2010, 28 federal defendants have been sentenced for kidnapping offenses. The median sentence for those defendants was 153.5 months, and the mean was 159.8 months. Of the 47 federal defendants sentenced for murder, the median prison term was 262 months, and the mean was 275 months. United States Sentencing Commission,

*Third Quarter FY10 Quarterly Sentencing Update* at 31, Sept. 3, 2010, available online at http://ussc.gov/sc_cases/USSC_2010_Quarter_Report_3rd.pdf. Given that Taylor did not kill or physically injure anyone, and that he did not take his hostages for pecuniary gain or for sexual gratification, there would not seem to be a reason for him to receive a sentence much higher than other kidnappers and murderers have received. The 25 mandatory years he is facing are already greater than the average sentences for kidnapping and even murder.

Sentencing Guidelines and Reasons to Vary

There is a conflict regarding the applicable Guideline Range in this case. As discussed in the defendant's legal memorandum attached as Exhibit 3, the defense contends that the appropriate sentence range, as calculated under the Guidelines, should be 292-365 months. Of course, this range is just one factor to consider.

The health considerations previously discussed are substantial, more than ordinarily exist when a defendant is sentenced in a case such as this. The mandatory 25-year sentence alone exceeds Taylor's remaining life expectancy.

The effect of "armed career criminal" status on Taylor's guideline range should also be considered. Two of the three predicate offenses are 30+ years old, and many would view the drastic enhancement to a mandatory 15-year sentence for felon in possession to be excessive under those circumstances. Not only does the ACCA gun charge create the mandatory 15-year sentence, it inflates his criminal history category to IV, not just for the gun charge, but for *all* of the other counts. Taylor's criminal history category would only be II if not for the ACCA adjustment. The guideline range for his offenses (assuming an offense level of 37, as asserted by the defense) would be 235-293, less than the mandatory 25 years (300 months) he is already facing.

Taylor's physical health problems, his mental health issues, the mitigating circumstances regarding his motive for committing the crimes, and disagreement with the arbitrary enhancements created by the ACCA are all reasons to vary below the guideline range.

Purposes of Punishment

*Retribution* - The sentence imposed must reflect the seriousness of the offenses, provide just punishment for the crime, and promote respect for the law. Twenty-five years is a serious sentence, reserved for the most serious of crimes. It is higher than the average sentence imposed in the 47 federal murder cases prosecuted nationally during the first three quarters of the 2010 fiscal year. Taylor's offense was serious, but less serious than murder and arguably even less serious than rape. Three hundred months is enough to reflect that seriousness and is just.

*Deterrence/Incapacitation* - Because of his increasing age and worsening health, Taylor is less and less likely to be a recidivism risk. Realistically, because of his life expectancy, a 25 year sentence is likely to be a *de facto* life sentence, and certainly long enough to ensure that he will not be a danger to society if he lives that long. There is no reason to incapacitate him any longer than that.

Twenty-five years is also a significant deterrent to anyone who would contemplate committing a crime (although most criminals do not think about potential consequences when they commit the crimes, so the deterrent value of any sentence is questionable, at best). To a person 35 years or younger, 25 years seems like a lifetime, and for anyone 40 or over, 25 years represents the remainder of their normal working life. A longer sentence is not needed for deterrence.

*Rehabilitation* - Taylor's only period of real incarceration was from 1993-1998 after he shot his wife in both feet and the leg. His records from that incarceration show that he

was amenable to rehabilitation. He took courses and held employment. He stayed out of trouble. Upon his release, he remained crime-free for 11 years, and held steady employment until becoming disabled. He was amenable to treatment then, and he remains so.

Unlike during his prior incarceration, Taylor now suffers from significant health issues that will need to be addressed. He is also in need of counselling and treatment for depression, to deal with his grief over the recent and long-term losses suffered in his life. To further these rehabilitative concerns, Taylor requests placement at a Federal Medical Center, preferably Butner.

## CONCLUSION

For the reasons set forth herein, Warren Aubra Taylor respectfully urges this Honorable Court to impose sentence of 300 months, a sentence which is sufficient, but not greater than necessary, to accomplish the goals of punishment after considering all of the 3553(a) factors.

WARREN AUBRA TAYLOR

By /s Fay F. Spence

Fay F. Spence, Esq., Va. Bar #27906
Assistant Federal Public Defender
210 First St. SW, Suite 400
Roanoke, VA 24011
(540) 777-0880
(540) 777-0890 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October, 2010, I electronically filed the foregoing Motion with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to Anthony Giorno, First Assistant United States Attorney, counsel for the United States.

/s Fay F. Spence